CLERK US DISTRICT COURT
NORTHERN DIST OF TX
FILED

2015 JUN 26 PM 3: 25

DEPUTY CLERK _____

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| PAUL MICHAELS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:14-CV-382-Y-BL |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Referred to U.S. Magistrate Judge |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Paul Michaels (Claimant) seeks judicial review of the decision of the Commissioner of Social Security (Commissioner), who denied his application for disability insurance benefits (DIB) under Title II of the Social Security Act (Act). Pursuant to Special Order 3 and 28 U.S.C. § 636(c) the case was preliminarily assigned to this court. The parties have not consented to proceed before a United States Magistrate Judge. After considering all the pleadings, briefs, and administrative record, this court recommends the decision of the Commissioner be affirmed and this case be dismissed.

## I. STATEMENT OF THE CASE

Claimant protectively filed his claim for DIB on September 27, 2011. Tr. 71. His claim was denied initially on November 9, 2011, and again upon reconsideration on February 9, 2012. Tr. 74, 81. On November 5, 2013, an Administrative Law Judge (ALJ) held a hearing at which Claimant testified. In a written decision dated December 20, 2013, the ALJ determined that

1

Claimant was not disabled under the Act. Specifically, the ALJ decided: Claimant had not engaged in substantial gainful activity since his alleged onset date of May 29, 2011; Claimant had several severe impairments, including issues with his eyes, inner ear, hip, back, and other areas; and Claimant did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ also determined that Claimant had the following residual functional capacity (RFC):

> [T]he claimant has the [RFC] to lift and/or carry 50 pounds occasionally and 25 pounds frequently, to stand and/or walk for six of eight hours, and to sit for six of eight hours. The claimant cannot perform climbing or balancing. The claimant must avoid work exposure to hazardous moving machinery and unprotected heights. The claimant cannot perform work requiring night vision, and is limited to work with only occasional far acuity and frequent near acuity.

Tr. 23–25.

Finally, the ALJ determined that while Claimant could not perform his past relevant work as an air pilot, considering his age, education, work experience and RFC, "the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." Tr. 26. The ALJ further found, in the alternative, that even without the acquired skills, there were jobs that existed in significant numbers that Claimant could perform. Tr. 26–27.

Accordingly, the ALJ determined that Claimant was not disabled under the Act, and denied his application for DIB. The Appeals Council denied review on April 1, 2014. *Id.* at 1–3. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (stating Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

2

## II. FACTUAL BACKGROUND

Claimant was born in 1955 and was fifty-seven years old at the time of his administrative hearing. He graduated college and joined the military, where he became a fighter pilot for 8.5 years. Tr. 52–53. After his service in the military, Claimant flew passenger planes for a commercial air carrier. Tr. 53. After working as a commercial pilot for fifteen years, Claimant's eye doctor discovered Claimant had cataracts. Tr. 53. Claimant's cataract surgery did not go well. Tr. 53. He was left with glare and halo problems, sensitivity to high and low light, blurred vision, nausea, and vertigo. Tr. 53–54. Unable to pass the FAA's medical requirements, Claimant had to give up his job as a pilot. Tr. 55.

Claimant has back and hip problems. While in college, he fractured his pelvis and has since been diagnosed with degenerative hip and vertebrae disease. Tr. 57. He has a herniated disc in his back that causes him leg pain, and, combined with the vertigo, makes walking difficult, leading to occasional falls. Tr. 55–57. Claimant suffers from sleep apnea and insomnia. Tr. 57–58. He has psoriasis on several areas of his body, and the steroid cream he applies causes him to lose sleep as well. Tr. 58. Relevant here on appeal, however, are only Claimant's back problems.

As a result of these medical issues, Claimant spends much of his day in a reclining chair, which puts his hip and back in a less painful position as sitting in an upright chair or standing. Tr. 60. Claimant believes his impairments render him disabled under the Act.

## III. STANDARD OF REVIEW

A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A), 423(d)(1)(A) (2012). "'Substantial gainful

activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b) (2013).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

This court's review of the Commissioner's decision to deny disability benefits is limited to an inquiry into whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson*, 309 F.3d at 272; *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). If substantial evidence supports the Commissioner's findings, then the findings are conclusive and

the court must affirm the Commissioner's decision. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. Moreover, "'[c]onflicts in the evidence are for the Commissioner and not the courts to resolve.'" *Id.* (quoting *Newton*, 209 F.3d at 452).

## IV. DISCUSSION

The court begins with the concept of new evidence submitted to the Appeals Council after the ALJ issued her decision. In this case, such evidence settles three of the four issues Claimant brings before this court on appeal.

The ALJ rendered her decision on December 20, 2013. On December 30, 2013, Claimant had MRI tests done. On January 24, 2014, Claimant secured a letter from a Vocational Expert (VE) named Jerold Hildre. Claimant alleges that the MRI shows he was in a worse state than the ALJ acknowledged, and that the VE letter shows Claimant did not retain transferrable skills. The Appeals Council denied review on April 1, 2014, after receiving and reviewing the MRI results and the VE letter.

In the Fifth Circuit, the "final decision" of the Commissioner includes the Appeals Council's denial of a request for review. *See Higginbotham*, 405 F.3d at 335–38. Meaning, as the case stands before this court, the late-submitted MRI results and VE letter are deemed to have been considered by the Commissioner in her final decision to deny benefits. *Id.* As such, they are part of the record reviewable by this court on appeal. *Id.* at 337.

"The standards governing consideration of additional evidence by the Appeals Council and district court are similar in requiring that the evidence be both new and material." *Thomas v.*

*Colvin*, 587 F.App'x 162, 165 (5th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.970(b), 404.976(b)(1), 416.1470(b), and 416.1476(b)).

> 20 C.F.R. § 404.970 provides:
>
> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

*See also* 20 C.F.R. §§ 404.976(b)(1), 416.1470(b), 416.1476(b) (all same). The Fifth Circuit Court of Appeals in *Bradley v. Bowen* explained when a court should return a case to the Commissioner for further consideration of the new evidence:

> [I]n order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding. In interpreting the materiality requirement . . . a remand to the secretary is not justified if there is no reasonable possibility that it would have changed the outcome of the Secretary's determination. . . . Furthermore, implicit in the materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of later-acquired disability or of the subsequent deterioration of the previously non-disabling condition.

809 F.2d 1054, 1058 (5th Cir. 1987) (citations and internal quotation marks omitted); *see also Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994) ("This court may remand to the [Commissioner] and order consideration of additional evidence upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.") (internal quotation marks omitted); *Ripley v. Chater*, 67 F.3d 552, 555–56 (5th Cir. 1995) ("To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is 'new' and 'material' as well as a showing of 'good cause' for failing to provide this evidence at the original proceedings.").

First, the Commissioner concedes that the MRI and VE letter are new. *See* Def.'s Br. 5–6.

Second, "[r]eviewing the materiality of new evidence requires [the court] to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable [possibility] that this new evidence would change the outcome of the [Commissioner's] decision." *Ripley*, 67 F.3d at 555.[1]

The Commissioner does not contest that the new evidence relates to the appropriate time period. Instead, the Commissioner picks up the second materiality inquiry, claiming there is not a reasonable probability the new evidence would change the outcome of the Commissioner's decision. *See* Def.'s Br. 4–5. The job of the Appeals Council was to determine if the new evidence was contrary to the weight of the evidence in the record. *See, e.g.*, 20 C.F.R. § 404.970(b). The Appeals Council specifically answered that inquiry in the negative. Tr. 1 (declining review after stating it would review a case where new and material evidence was submitted and the ALJ's decision is contrary to the weight of all the evidence now in the record). The Appeals Council clearly found that the ALJ based her decisions on substantial evidence in the record. *See id.* (denying review after stating it would review a case not supported by substantial evidence). It naturally follows that there is not a reasonable possibility that the new evidence would change the outcome of the Commissioner's decision. *See Ripley*, 67 F.3d at 555.

Comprising the great weight of the evidence showing Claimant could perform work at the medium exertion level were, *inter alia*, the medical records of Claimant's treating physician, Dr. Barry Alldredge, M.D. *See* Tr. 532–91. Dr. Alldredge performed several physical

---

[1] The *Ripley* court used the term "reasonable probability." However, subsequent cases have made clear that was a misstatement, and the correct inquiry is whether there is a reasonable *possibility* that the new evidence would have changed the outcome of the disability determination. *See, e.g., Bradley*, 809 F.2d at 1058 (noting the reasonable possibility standard); *King v. Colvin*, No. 3:11-CV-1387-BN, 2013 U.S. Dist. LEXIS 166207, 2013 WL 6162965 (N.D. Tex. Nov. 22, 2013) (slip op.) (detailing the origins of the erroneous "reasonable probability" language, likely simply a mistake in *Ripley*).

examinations during the claimed period of disability. The examinations repeatedly showed Claimant retained good range of motion and minimal tenderness; Claimant displayed negative straight leg raises and no edema. *See* Tr. 24. Further evidence showing Claimant could perform work at the medium exertional level was the fact that Claimant was only ever under conservative pain management for his back pain. *See* Tr. 24. Meaning, neither Dr. Alldredge nor any other medical professional in the record ever prescribed Claimant special pain medication. *See* Tr. 24; Def.'s Br. 6.

As to the second piece of new evidence, relating to transferrable skills, the court assumes, *arguendo*, that Claimant did not retain any transferrable skills. Even still, there is no reasonable possibility that the new VE letter evidence would have changed the outcome of the Commissioner's decision because the ALJ anticipated this situation. The ALJ told VE Brooks at the administrative hearing to take away the transferrable skills and asked if any jobs remained that Claimant could perform. Tr. 66. The VE provided three examples of jobs that Claimant could perform without the allegedly transferrable skills. *See* Tr. 67. It is the role of the Commissioner rather than the court to weigh the evidence. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Appeals Council did just that, taking into account the new MRI and VE letter evidence. Tr. 4–5. It concluded the ALJ's decision was not against the great weight of the evidence in the record. Tr. 1–2.

There was ample evidence in the record such that the new evidence was not against the great weight of the evidence, *Thomas*. 587 F.App'x at 165, and such that a reasonable possibility the new evidence would have changed the Commissioner's decision did not exist. *Ripley*, 67 F.3d at 555.

Thirdly in the remand inquiry, the court considers whether there is good cause for

Claimant's failure to incorporate the new evidence at a prior proceeding. Straight away, Claimant does not so much as attempt to show why this new evidence was not submitted earlier in the proceedings. *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989) (per curiam) (a proper explanation must be given why the new evidence was not submitted earlier). Claimant does not allege an MRI or an opinion letter from a VE are particularly difficult to obtain; indeed, such evidence is relatively simple to obtain. *See, e.g., Ripley*, 67 F.3d at 555–56 (finding good cause where new evidence was revealed only during a major back surgery which must be ordered and scheduled by a doctor and became available only after the Commissioner's decision). An MRI is not a major back surgery; it can be scheduled and completed with relative ease. A letter from a VE is similarly painless. Flatly, there appears to be no cause whatsoever why Claimant's new evidence was not included in the record at an earlier stage in the proceedings.

In conclusion, then, it does not appear to this court that remand to consider the new evidence is justified in this case. *See Bradley*, 809 F.2d at 1058. This conclusion settles the first three of Claimant's four issues, all of which claim new evidence necessitates remand.[2] As stated, this is not the case, so the court proceeds to Claimant's fourth issue.

Claimant's fourth issue asserts the ALJ relied on her own lay opinion and failed to apply regulatory factors to Claimant's treating physician. Generally the opinion of a treating physician should be accorded great weight because the treating physician is familiar with a claimant's impairments, treatments, and responses. *Newton*, 209 F.3d at 455. Nonetheless, "the ALJ is

---

[2] Claimant asserts: (1) the ALJ's RFC finding is not supported by substantial evidence, considering the new MRI results; (2) the ALJ's credibility finding is not supported by substantial evidence, again considering the new MRI results; (3) the VE letter from Jerold Hildre renders the ALJ's decision not supported by substantial evidence and creates a conflict the Appeals Council failed to resolve; and (4) the ALJ failed to apply the regulatory factors to Dr. Alldredge.

entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly," *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), the disability decision is determined by the Commissioner alone. *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001). When good cause exists, an ALJ may assign little or no weight to a treating source's opinion. *Newton*, 209 F.3d at 456. Good cause includes when "the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.*

The ALJ made clear that the portion of Dr. Alldredge's evidence not given weight was simply the physical RFC finding. Tr. 25. This RFC finding was mostly based on Claimant's own subjective complaints of pain and was not supported by the more than two years of treatment findings of Dr. Alldredge himself, which the ALJ explicitly gave substantial weight. Tr. 24. The court determines that good cause existed in this case for the ALJ to accept the treating physician's objective examination results spanning 2.5 years and reject the "conclusory" and "unsupported" physical RFC finding, which was based primarily on Claimant's own subjective complaints of pain. *See* Tr. 24–25; *Newton*, 209 F.3d at 456.

In all, remand is not required in this case to consider any new evidence. *Bradley*, 809 F.2d at 1058. Additionally, the ALJ properly weighed the opinions of the medical professionals, including treating physician Dr. Alldredge. Because substantial evidence supports the ALJ's determinations, her decision is conclusive and must be upheld. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

## V. CONCLUSION

For the foregoing reasons, it is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and Claimant's complaint be **DISMISSED**.

IT IS ORDERED that this case is **TRANSFERRED** back to the docket of the United States District Judge.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

**SO ORDERED.**

Dated this 26th day of June, 2015.

_____
E. SCOTT FROST
**UNITED STATES MAGISTRATE JUDGE**